IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NATALIE ROSSI,

                                        Plaintiff,                              OPINION and ORDER

         v.

KOHN LAW FIRM S.C.,                                                              19-cv-192-jdp

                                        Defendant.

---

This case arises out of a complaint filed by defendant Kohn Law Firm, S.C. in Wisconsin state court against Natalie Rossi for defaulting on a credit-card debt owed to Discover Bank. That complaint resulted in a judgment against Rossi for several thousand dollars. Rossi doesn't challenge that judgment in this case, but she contends that Kohn violated the Fair Debt Collection Practices Act (FDCPA) by falsely implying that the lawyer who signed the complaint, Kirk Emick, was meaningfully involved in assessing the merits of the claim against Rossi. Rossi's "meaningful involvement" claim is an example of an increasingly common category of FDCPA claim, seeking to extend principles that have been applied to debt-collection letters to debt-enforcement complaints filed in court.

Kohn moved for summary judgment on multiple grounds. Dkt. 10. But neither party addressed an important threshold question, which is whether Rossi suffered an injury that gives her standing to sue under Article III of the Constitution. So the court gave the parties an opportunity to file supplemental materials addressing that question. Dkt. 36. Rossi contends that she has standing; Kohn contends that she doesn't. Dkt. 37 and Dkt. 38. Rossi has also filed a motion to supplement the record with a copy of her deposition, Dkt. 40, which the court will grant. The court will consider Rossi's deposition in evaluating both standing and the merits.

The court will grant Kohn's motion for summary judgment. Rossi doesn't have standing to bring this case because she doesn't identify a concrete injury that she suffered as a result of any representation by Kohn. Although she says that she would have disputed the debt if she realized how little time Emick had spent on her case, she neither supports that assertion with specific facts nor explains what disputing the debt would have gotten her.

Rossi's claim fails on the merits as well because she hasn't shown that there is a genuine issue of material fact on the question whether Kohn was meaningfully involved in preparing the complaint. Although Emick spent only a few minutes verifying the essential details of Rossi's case, no reasonable jury could find that his signature amounted to a misrepresentation that violated the FDCPA.

ANALYSIS

Rossi's claim against Kohn rests on 15 U.S.C. § 1692e, which states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute lists sixteen illustrative examples of the types of prohibited representations, including a "false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). Rossi contends that Kohn violated § 1692e by falsely representing in its state-court complaint against her that attorney Emick was meaningfully involved in preparing the lawsuit.

The complaint at issue does not contain any express representations about Emick's level of involvement, but Rossi contends that it is implicit from Emick's signature "that an attorney had investigated the matter in a significant and substantial way." Dkt. 21, at 14. And because

Kohn's records show that Emick spent fewer than six minutes on Rossi's case, she contends that a reasonable jury could find that Emick was not meaningfully involved.

Kohn seeks summary judgment on several grounds, including: (1) the FDCPA doesn't apply to a lawyer's conduct in litigation generally or to complaints in particular; (2) the "meaningful involvement" doctrine established by courts doesn't apply to complaints; (3) applying the meaningful involvement doctrine in this case would violate Kohn's First Amendment rights; (4) Rossi cannot prevail on her claim without an expert; and (5) no reasonable jury could find that Emick was not meaningfully involved in assessing the merits of the state-court lawsuit. And in its supplemental filing, Kohn contends that Rossi lacks standing to sue. Because standing is a jurisdictional question, the court will address that issue first. *See Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009).

## A. Standing

A plaintiff does not have standing to sue under Article III of the Constitution unless she shows that she suffered an injury in fact that is both fairly traceable to the challenged conduct of the defendant and likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks omitted). As with any other factual proposition, the plaintiff must prove standing with specific facts at the summary judgment stage. *Id.* at 561.

Rossi articulates her alleged injury in slightly different ways. In one part of her brief, she says that she suffered an injury in fact because she was "deprived of information she was entitled to, and that deprivation had the potential to affect her actions." Dkt. 37, at 1. In

another part of her brief, she says that a violation of § 1692e(3) "creates a concrete injury in and of itself." *Id.* at 7. In her declaration, Rossi says that she "would have disputed the amount of the debt and asked that [Kohn] prove it, or tried to consult with a lawyer to see if there were defenses to the debt" if she had known "how little effort or investigation the Kohn firm, and Attorney Emick performed before suing." Dkt. 28, ¶ 7. From these statements, the court understands Rossi to be raising two contentions: (1) any misrepresentation that violates the FDCPA is an injury in fact; and (2) Rossi suffered an injury in fact because Kohn's alleged misrepresentation dissuaded her from challenging the debt.[1]

The court will first clarify what alleged misrepresentations are at issue and then consider both of Rossi's contentions about how she was injured.

### 1.  Implied representation

Because Rossi is alleging that she was harmed by misrepresentations in the state-court complaint, it is important to clarify at the outset what representations Kohn made. As noted above, Rossi says in her brief that Emick's signature on the complaint implied "that an attorney had investigated the matter in a significant and substantial way." Dkt. 21, at 14. In her declaration, she frames the issue somewhat differently, saying that she "believed that Attorney Emick had done the kind of work I had seen [my attorney] do on my son's case." Dkt. 27, ¶ 7.

---

[1] Rossi also says in her brief that she "suffered emotional distress in part from worrying about a judgment being entered against her," Dkt. 37, at 4 (citing Dkt. 1, ¶ 31), but she does not rely on emotional distress as a basis for standing. That makes sense because any distress would likely be the result of the lawsuit itself and not any alleged misrepresentation about Emick's involvement in the case. *See Diehm v. Messerli* & *Kramer, P.A.,* No. 18-cv-830-wmc, 2019 WL 6790432, at *6 (W.D. Wis. Dec. 12, 2019) ("[The plaintiff's alleged anxiety] is not traceable to the alleged FDCPA violation; instead, it is simply tied to the filing of a valid lawsuit."). In any event, because Rossi doesn't rely on emotional distress as an injury, the court need not decide whether any distress was fairly traceable to Kohn's alleged conduct.

And in her deposition, she says she believed that Emick spent more time reviewing her case than he actually had. Dkt. 41-1 (Rossi Dep. 121:24–25).

In support of her contentions about what an attorney's signature implies, Rossi relies on Seventh Circuit cases in which the court determined what an attorney's signature on a debt-collection *letter* implies. *See Avila v. Rubin*, 84 F.3d 222, 228–29 (7th Cir. 1996); *Boyd v. Wexler*, 275 F.3d 642, 647 (7th Cir. 2001); *Nielsen v. Dickerson*, 307 F.3d 623, 638–39 (7th Cir. 2002). The focus of the court in each of those cases was whether the debt collector had falsely implied that a letter was "from" a lawyer, in violation of § 1692e(3). And the court held that a debt-collection letter is not truly from a lawyer unless the lawyer was involved in preparing the letter.

Rossi doesn't cite any cases in which the court of appeals has extended the logic of *Avila*, *Boyd*, or *Nielsen* to attorney signatures on a complaint, and the court has found none. And there are reasons to question whether those cases should be applied rotely to complaints. A complaint signed by an attorney is inherently "from" that attorney in a way that a debt-collection letter is not, regardless how personally involved the attorney was in drafting the complaint. Unlike a letter, only a lawyer can sign a complaint on behalf of a company. *See 1756 W. Lake St. LLC v. Am. Chartered Bank,* 787 F.3d 383, 385 (7th Cir. 2015). It is the lawyer who must litigate the complaint and stand by its allegations. And it is the lawyer who will be on the hook for a Rule 11 violation or its state-law equivalent if the allegations turn out to be frivolous. As Kohn points out, a complaint filed in Wisconsin state court is not just a representation to the defendant; it is also a representation to the *court*. Wis. Stat. § 802.05(2). So any misrepresentations in the complaint could subject that lawyer to sanctions. *Id.* § 802.05(3). Because the lawyer is obligated under the law to take responsibility for the complaint, this

suggests that the complaint is "from" the lawyer, even if he or she wasn't primarily responsible for drafting it.

But even assuming that letters and complaints should be treated the same, the cases Rossi cites do not hold that an attorney signature means that the attorney "investigated the matter in a significant and substantial way," that the attorney spent a particular amount of time on the case, or that the signing attorney had done similar work as that of a different lawyer in a different type of case. Rather, the court of appeals has held that a debt-collection letter signed by an attorney "implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action" and that "the attorney has some personal involvement in the decision to send the letter." *Avila*, 84 F.3d at 229; *see also Nielsen*, 307 F.3d at 635 (signature implies that letter is "the product of the attorney's professional judgment" and that he has "independently determined that the debt is ripe for legal action by reviewing the debtor's file"); *Boyd*, 275 F.3d at 647 (lawyer's letterhead and signature implies that "a lawyer had made a minimally responsible determination that there was probable cause to believe that the recipient actually owed the amount claimed by the creditor").

Under *Avila*, *Boyd*, and *Nielsen*, the implied representation isn't about the quality of the work that the lawyer performed or the amount of time the lawyer spent. It is simply whether the lawyer exercised professional judgment in making the legal determinations in the document. The FDCPA does not create a cause of action for Rule 11 violations. *See Jenkins v. Heintz*, 124 F.3d 824, 833 (7th Cir. 1997). This is a problem for Rossi because her alleged injuries appear to be primarily based on her perception of how much time a lawyer should spend on a case rather than a belief that Emick did or did not exercise professional judgment.

This suggests that any injuries Rossi suffered are based on her own assumptions rather any representations by Kohn. And if her injuries are the result of her own assumptions, they are not fairly traceable to Kohn's conduct for the purpose of showing her standing to sue. *See Parvati Corp. v. City of Oak Forest, Ill.,* 630 F.3d 512, 517–18 (7th Cir. 2010) (self-inflicted injuries do not provide a basis for standing). But even if the court assumes that time spent is a fair proxy for professional involvement, Rossi's alleged injuries do not meet the constitutional minimum.

### 2. Violation of § 1692e

Rossi's first contention—that the implied false representation is itself an injury—is inconsistent with *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019). In *Spokeo*, the Court held that a violation of the law is not an injury in and of itself; rather Article III "requires a concrete injury even in the context of a statutory violation." *Spokeo,* 136 S.Ct. at 1549. Even statutory violations that result in the dissemination of false information are not sufficient per se. *Id.* ("[N]ot all inaccuracies cause harm or present any material risk of harm."). As an obvious example, the Court cited a hypothetical requirement to provide a correct zip code. *Id.* at 1550. The Court stated that "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

In *Casillas*, the court of appeals reiterated this point in the context of a claim under the FDCPA: "the fact that Congress has authorized a plaintiff to sue a debt collector who fails to comply with any requirement of the Fair Debt Collection Practices Act does not mean that [the plaintiff] has standing." 926 F.3d at 333 (internal quotation marks, citations, and alterations omitted); *see also Meyers v. Nicolet Rest. of De Pere, LLC,* 843 F.3d 724, 727 n.2 (7th

7

Cir. 2016) ("[W]hether the right is characterized as 'substantive' or 'procedural,' its violation must be accompanied by an injury-in-fact. A violation of a statute that causes no harm does not trigger a federal case."). The defendant in *Casillas* had failed to comply with an FDCPA requirement to notify the plaintiff that she had to dispute her debt in writing and that, if she failed to do so, she would forfeit various protections that the FDCPA provided. The court rejected the plaintiff's contention that her "informational injury" provided standing, stating that "the bare harm of receiving inaccurate or incomplete information" isn't enough. *Id.* Rossi cites *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017), for the proposition that a plaintiff who receives misinformation in violation of the FDCPA has suffered an injury in fact, but *Pogorzelski* was decided before *Casillas*, so it is not instructive.

    *Spokeo* recognized that there are some situations in which an "intangible harm" can qualify as an injury in fact and that "both history and the judgment of Congress play important roles" in making that determination. 136 S. Ct. at 1549. In this case, neither of those considerations support a view that Rossi suffered an injury in fact. As for history, the Court stated that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 136 S. Ct. at 1549. Although misrepresentations serve as the basis for tort claims, common-law misrepresentation claims require the plaintiff to show justifiable reliance. *See* Restatement (First) of Torts §§ 525, 552 (1938). So receiving misleading information in violation of § 1692e is not enough on its own. *See, e.g., Hagy v. Demers & Adams,* 882 F.3d 616, 621–22 (6th Cir. 2018) (failure to disclose status as a debt collector in violation of § 1692e(11) not an injury when the plaintiffs did not show "that this failure to disclose

caused them any actual harm beyond [a] bare procedural violation" (internal quotation marks omitted)).

As for the judgment of Congress, the Court stated that "Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law," so long as Congress respects the requirements of Article III. *Spokeo*, 136 S. Ct. at 1549; (internal quotation marks and alterations omitted); *see also Lavallee v. Med-1 Sols., LLC,* 932 F.3d 1049, 1052–53 (7th Cir. 2019) ("[W]hile Congress has the power to define intangible harms as legal injuries for which a plaintiff can seek relief—including violations of the FDCPA—it must operate within the confines of Article III." (internal quotation marks omitted)). Applying this principle, the court of appeals has held that "the plaintiff must show that the statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017).

The core purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e); *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016). The court is not persuaded that the alleged statutory violation in this case presented an appreciable risk of harm to Congress's concrete interest in preventing such abuse. Obviously, signing a complaint without identifying how much time the lawyer spent preparing it is not an inherently abusive practice. Using an attorney to file a defective complaint could be. *Cf. Murphy v. Stupar, Schuster & Bartell, SC,* 337 F. Supp. 3d 837, 848 (W.D. Wis. 2018) ("[C]omplaints that falsely imply that the debt collector has a legally enforceable right [may violate the FDCPA.]"). But Rossi doesn't identify anything about the state-court complaint that would have been different if Emick had spent more time researching and drafting it. So even if Kohn

falsely implied that Emick was more involved in preparing the case than he really was, that misrepresentation is not a cognizable injury in and of itself.

The court agrees with the summary of the rule articulated by the Court of Appeals for the Fourth Circuit:

> An 'informational injury' is a type of intangible injury that can constitute an Article III injury in fact. However, a statutory violation alone does not create a concrete informational injury sufficient to support standing. Rather, a constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect.

*Dreher v. Experian Info. Sols., Inc.*: 856 F.3d 337, 345 (4th Cir. 2017) (citations omitted and emphasis in original). The court will consider next whether Kohn's alleged misrepresentation created a real harm with an adverse effect.

### 3.  Effect of Kohn's conduct on Rossi's behavior

Rossi's second contention—that she suffered an injury in fact because Kohn's alleged misrepresentation dissuaded her from challenging the debt—is closer to the mark. In *Casillas*, the court observed that the plaintiff had failed to allege that she would have done anything with the information that the defendant should have provided:

> She did not allege that she tried to dispute or verify her debt orally and therefore lost or risked losing the statutory protections. Indeed, she did not allege that she ever even considered contacting [the defendant] or that she had any doubt about whether she owed Harvester Financial Credit Union the stated amount of money. She complained only that her notice was missing some information that she did not suggest that she would ever have used. Any risk of harm was entirely counterfactual: she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them. Because [defendant]'s mistake didn't put Casillas in harm's way, it was nothing more than a "bare procedural violation."

926 F.3d at 334. In this case, Rossi does say in her declaration that she would have acted differently if she had all facts. Specifically, she says that she would have disputed the debt or at least consulted with a lawyer if she had known "how little effort or investigation the Kohn firm, and Attorney Emick performed before suing." Dkt. 28, ¶ 7. But because she assumed that Emick had put a lot of work into the complaint, she believed that "there was no chance that I could contest the debt and no chance that I would win that contest." *Id*. Although these are the general type of allegations that could show a concrete injury, they fail in this case for multiple reasons.

### a. Specific facts

The first problem is that Rossi's only evidence that she would have disputed the debt is a conclusory assertion in her declaration. At the pleading stage, that assertion might be enough to defeat a motion to dismiss. But "[t]he object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). Rather, "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter. . . . [I]t requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake v. Minnesota Mining & Manufacturing Co*., 134 F.3d 878, 887 (7th Cir. 1998).

None of the more specific statements in Rossi's declaration and deposition support a conclusion that any perception Rossi had about Emick's involvement in drafting the complaint affected her decision whether to dispute the debt. In her declaration, Rossi states that she "did not know any attorneys who would defend [her] in a lawsuit" at the time she was served, that she was not aware of laws protecting the rights of debtors, and that she did not believe that she

11

could afford a lawyer. Dkt. 28, ¶ 4. Those concerns have nothing to do with Rossi's perception of Emick's involvement in the case.

Other paragraphs in Rossi's declaration support the view that her reasons for not hiring a lawyer or disputing the debt were that she knew she owed the debt, she was concerned about the cost of a lawyer, and she wasn't rights aware of her rights under the law. She acknowledges that she admitted the amount of the debt she owed in her answer to the state-court complaint. *Id.*, ¶ 6. And she says that she did not consider disputing the debt until after judgment was entered, when she he learned that some lawyers are "often able to represent people on a low-cost or no-cost basis in these matters" and that "there are in fact defenses to debt collection which do not require me to prove how much (or how little) I owed." *Id.*, ¶¶ 8–10. Finally, she acknowledges that it was the lawsuit itself, rather than any perceptions about Emick's involvement, that led to the perception that she couldn't fight the debt. *Id.*, ¶ 13.

In her deposition, Rossi was unable to say how long she believed that Emick should have spent on her case and she couldn't identify anything that she believes he should have done but didn't. Dkt. 41-1 (Rossi Dep. 97:15–19, 98:11–14). She testified that, when she was served with the complaint, she wasn't thinking about what Emick did or did not review or how much time he spent; she assumed only that he "had what he needed" to file the lawsuit. *Id.* at 122:9–15, 123:10–124:10. She also acknowledges that her decision not to hire a lawyer wasn't based on Emick's signature or any representation in the complaint. *Id.* at 129:10–130:24.

This testimony from Rossi's declaration and deposition makes it clear that her decision not to dispute the debt was based on her knowledge that she owed the debt and her lack of knowledge about the legal resources available to her, not on any belief that Emick was more involved in preparing her case than he really was. Although her declaration also includes

12

conclusory statements that she would have acted differently had she known how much work Emick had really done, "[i]t is well settled that conclusory allegations . . . do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002).

### b.  Unsophisticated consumer

The second problem with Rossi's allegations is that they are not based on reasonable assumptions. Representations from a debt collector are viewed from the perspective of the "unsophisticated debtor," whose "knowledge is not as great as that of a federal judge," but who nevertheless "possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 815 (7th Cir. 2019). Even if the complaint against Rossi implied that Emick had conducted a substantial investigation before filing, an unsophisticated consumer would not simply assume that any such complaint was ironclad and impossible to dispute. It is common knowledge that even the best lawyers sometimes bring lawsuits that fail. Because Rossi's decision not to dispute the debt was the result of her own unreasonable assumptions rather than any representations by Kohn, she does not have standing to sue. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

### c.  Loss of a chance to dispute the debt

Even if Rossi had adduced specific evidence that she would have disputed the debt and even if it would be reasonable to assume that a lawsuit filed on behalf of an attorney could not fail, Rossi still would not have standing to sue under the circumstances of this case. Rossi identifies no concrete harm that she suffered by not disputing the debt. If anything, doing so would only have increased Rossi's losses.

13

If Rossi had a basis for disputing the debt, she would have a stronger argument. Evidence that the state-court lawsuit might have turned out differently would support a finding that Rossi had suffered an injury in fact. *See Satran v. LVNV Funding, LLC,* No. 17-cv-896-jdp, 2018 WL 2464486, at *2 (W.D. Wis. June 1, 2018) (plaintiff satisfied injury-in-fact requirement by alleging that attorney would have discovered defect with debt-collection lawsuit if he had reviewed the complaint before filing it). And, in her declaration, that is the type of injury that Rossi invokes. She says that she learned later that "there are potential defenses to lawsuits of the sort Attorney Emick and Kohn Law Firm filed against me, defenses that an attorney could have investigated to get the case dismissed, or get the amount I owed reduced." Dkt. 28, ¶ 11. But Rossi doesn't identify in her declaration or her brief any defenses that she could have raised in the state-court lawsuit. In fact, in her deposition, she admits that she had defaulted on her debt to Discover by failing to make a payment for more than a year and that she owed Discover the amount alleged in the state-court complaint. Dkt. 41-1 (Rossi Dep. 99:18–100:10 and 128:12–15).

If Rossi's claim were that Kohn falsely implied that Emick had been meaningfully involved in preparing a debt-collection *letter*, the viability of a potential defense would be less relevant. As the court of appeals has recognized, debt collectors sometimes use a lawyer's signature on a letter to falsely imply that the debtor is about to be sued. *See Avila*, 84 F.3d at 228 ("It is reasonable to believe that a dunning letter from an attorney threatening legal action will be more effective in collecting a debt than a letter from a collection agency."). In that situation, the lawyer's signature might coerce a debtor to make a payment that she otherwise would not have paid, or at least cause greater anxiety about the prospect of a lawsuit. Those are concrete injuries, regardless whether the debt is actually owed. But in the context of a

14

complaint, the debt collector has already taken legal action, and it is the lawsuit itself rather than the attorney's signature that shows that "the price of poker has just gone up." *Id.* Also, a debtor who simply ignores a letter may never have to pay the debt. But if a debtor ignores a complaint, generally that will result in a default judgment against her.[2] Rossi does not allege that Kohn has a practice of filing lawsuits and then abandoning them if the consumer disputes the debt.

In both her brief and her deposition, Rossi says that, regardless whether she owed the debt and regardless whether she had any defenses, she could have reached a more favorable settlement if she had retained an attorney in the state-court lawsuit. Dkt. 37, at 7; Dkt. 41-1 (Rossi Dep. 126:3–11). The loss of a chance to obtain a settlement is a concrete injury. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017). And it may be true that a lawyer could have negotiated a settlement for Rossi. But that injury is not fairly traceable to Kohn, which did not stop Rossi from retaining a lawyer. As noted above, Rossi says in her declaration that she chose not to fight the debt-collection lawsuit because she believed—based on her assumption that Emick had more thoroughly investigated her case—that "there was no chance that I could contest the debt and no chance that I would win that contest." Dkt. 28, ¶ 7. In other words, Rossi says that she didn't hire a lawyer because she believed that she couldn't win the case, which, as it turned out, was true. If she wanted a lawyer simply to get a better settlement, she could have done that regardless how strong she believed Discover's claims were. Thus, under Rossi's own explanation of her behavior, any implied representation from Kohn

---

[2] Rossi acknowledges this distinction in her declaration: "The fact that Discover had a lawyer suing me was significant to me because had Discover demanded that I pay the debt, without suing me, I would have felt more free to negotiate with Discover about how much I owed or how much I could or should pay." Dkt. 28, ¶ 13.

about Emick's amount of involvement in the case had no effect on her decision not to hire a lawyer or otherwise dispute the debt.

To be clear, the court is not holding that Rossi was required to show that she would have been able to defeat Discover's claims or even obtain a better settlement if she had received the information about Emick's amount of involvement. That much is clear from *Lavallee*, in which the plaintiff debtor alleged that the defendant debt collector failed to notify the plaintiff about her rights to dispute and verify the debt, as required by 15 U.S.C. § 1692g(a). 932 F.3d at 1049. The court held that the plaintiff had standing to sue, even though she had not identified any substantive objections to the debt. The court observed that the debt collector put the debtor at a "distinct disadvantage" by depriving her of knowledge about her rights: "If she had known about her rights, she could have disputed and sought verification of the debts— thereby requiring [the debt collector] to cease the collection action and obtain verification." *Id.* at 1053. The disadvantage was particularly significant in that case because the debt collector had already sued the debtor without giving her notice of her rights.

*Lavallee* does not help Rossi because the injury in that case was not just the deprivation of information itself. Rather, it was the loss of the debtor's ability to assert her rights and cease collection activities. It was possible that the debtor could have prevented or at least delayed the debt-collection lawsuit had she known about her rights. Rossi's situation isn't comparable. She identifies no right that she lost as a result of any implied misrepresentation by Kohn.

The court of appeals drew a similar line in *Robertson v. Allied Sols., LLC*, 902 F.3d 690 (7th Cir. 2018), a case brought under the Fair Credit Reporting Act. The plaintiff had received an offer of employment from the defendant, but it rescinded the job offer after obtaining a credit report on the plaintiff, who then sued because the defendant failed to comply with

requirements to give her notice and obtain her consent before requesting the report. The court found that the plaintiff had standing to sue, even though she wasn't disputing the accuracy of the report. Again, the injury was more than just the denial of required information. The plaintiff was injured by the loss of the chance "to bring additional facts to the employer's attention that put matters in a better light" or to "convince [the] employer to revisit its decision." *Id.* at 696–97. Here, Rossi hasn't identified a lost chance to do anything that could have made a difference in her case. Her situation is more like that in *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 615–17 (7th Cir. 2018), in which the court held that the plaintiffs lacked standing to sue because they failed to explain how they could have used the information denied to them under the Fair Credit Reporting Act. *See also Bryant v. Compass Grp. USA, Inc.,* No. 20-1443, 2020 WL 2121463, at *6 (7th Cir. May 5, 2020) ("The injury inflicted by nondisclosure is concrete if the plaintiff establishes that the withholding impaired her ability to use the information in a way the statute envisioned.").

The bottom line is that Rossi hasn't shown that she suffered a concrete harm as a result of an implied representation by Kohn in the state-court complaint. The court will dismiss this case for lack of standing.

## B.  Merits

Even if Rossi had shown that she had standing, her claim would fail on the merits. Kohn challenges Rossi's claim on multiple grounds, but the court will consider only one of them, which is that Rossi hasn't raised a genuine of material fact on the question whether Kohn violated § 1692e by making a false or misleading representation in the complaint.[3]

---

[3] The Supreme Court and the Court of Appeals for the Seventh Circuit have already rejected Kohn's contentions that the FDCPA doesn't apply to a lawyer's litigation conduct or to misrepresentations in a complaint. *See Heintz v. Jenkins,* 514 U.S. 291 (1995) (FDCPA applies

As discussed in the previous section, Rossi's claim rests on the view that Kohn falsely implied that the complaint was "from" Emick because he was not meaningfully involved in assessing the merits of the complaint. As also discussed, there is a strong argument that the complaint was from Emick regardless how much time he spent reviewing it. But for the purpose of the merits of Kohn's motion, the court will assume, as Rossi contends, that the standard from *Avila*, *Boyd*, and *Nielsen* is controlling: that Kohn may be held liable under § 1692e if Emick was not personally involved in the decision to file the debt-collection lawsuit and did not make his own professional judgment.

In his declaration, Emick says that he reviewed Rossi's file twice before authorizing a lawsuit, first on October 16, 2018, and again on October 18. Emick doesn't remember Rossi's case specifically, but he explained in both his declaration and deposition the general process he uses in each case review. He first reviews the notes of the paralegals who have prepared the file and the lawyer who authorized sending a collection letter. Dkt. 14, ¶ 17. He then confirms the following information before approving an account for legal action: Kohn is pursuing the correct individual for the correct balance; the account is proceeding in the correct venue based upon the debtor's residence; the statute of limitations has not expired; Kohn had the account terms and conditions; the monthly itemized credit card statements reflect the debtor's name and the last four digits of the account number; Kohn's file balance matches that of the final credit card statements; the debtor is not a minor; and non-lawyer staff have "scrubbed" the account, meaning that they determined whether the debtor is deceased, had filed for bankruptcy protection, or is on active military duty. *Id.*

---

to a lawyer's conduct that occurs in the context of litigation); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) (FDCPA applies to misrepresentations in a complaint).

Following Emick's approval, paralegals draft the complaint. *Id.,* ¶ 19. Emick then reviews the complaint and confirms the following information: the caption is correct; the case is proceeding in the correct venue; all of the substantive information in the complaint is truthful and accurate; the complaint identifies the correct balance; the final credit card statement is attached to the complaint and the balance in the statement matches the balance on Kohn's electronic file; and any private or sensitive information is redacted from the documents to be filed with the court. *Id.,* ¶ 20. Emick also reviews the file notes to determine whether there were any other communications with the debtor since his previous review, whether there was a payment plan or settlement in place, and whether the debtor had asserted a claim of fraud or identity theft. *Id.* Under these procedures, Emick rejected 652 proposed complaints over the course of a year. *Id.,* ¶ 22.

The review described in Emick's declaration is more substantial than the reviews criticized by the court of appeals in *Avila* and *Nielsen*. The lawyer in *Avila* "did not review the debtor's file; he did not determine when particular letters should be sent; he did not approve the sending of particular letters based upon the recommendation of others; he did not see particular letters before they were sent; and he did not even know the identities of the debtors to whom the letters were sent." *Avila,* 84 F.3d at 228–29. In *Avila,* the lawyer contributed nothing but his signature and his letterhead.

The facts in this case are distinguishable from *Nielsen* as well. The court of appeals noted several factors leading to the conclusion that the lawyer had not been sufficiently involved in preparing the collection letter: he was not responsible for deciding whether to send the letter; he did not have access to the information he would need to determine the consumer's liability; the lawyer's review of the file was purely ministerial; he used a form letter; his role in handling

19

responses to the letter was also ministerial; the lawyer received a flat fee of $2.45 for each letter he signed; he never took legal action to enforce a debt. *Nielsen*, 307 F.3d at 635–38. In this case, Emick was responsible for deciding whether to file a lawsuit, he had access to the debtor's file and reviewed it, and he obviously took legal action to enforce the debt by filing the complaint and litigating the case to completion.

Rossi doesn't attempt to show that the facts in this case are comparable to either *Avila* or *Nielsen*. Instead, Rossi relies primarily on *Boyd*. In that case, the lawyer stated that he reviewed each debtor's file to confirm the accuracy of the information in the file and to assess the validity of the debt collector's claim. *Boyd*, 275 F.3d at 644. The court of appeals did not question the sufficiency of the lawyer's stated process. But the court concluded that a jury could reject the lawyer's testimony in light of evidence that his firm of three lawyers mailed out an average of more than 50,000 debt collection letters each month, that all three lawyers also engaged in time-consuming litigation activities, and that the lawyer at issue was also involved in managing the firm. *Id.* at 645. Because the volume of mail was so large and the lawyer had so many other responsibilities, a reasonable jury could find that the lawyer had not actually reviewed the letter but had simply "rubber stamp[ed] his clients' demands." *Id.* at 646–47.

Rossi contends that *Boyd* is like this case and that a reasonable jury could infer from the amount of time that Emick spent on her case—5 minutes and 42 seconds—that he could not have conducted the review that he says he did. Certainly, 5 minutes and 42 seconds is much less time than a lawyer would spend on most types of cases. But a claim for defaulting on a credit card debt of a few hundred or thousand dollars will often be straightforward. Rossi doesn't identify anything about her case that would require more time than Emick spent.

20

The court in *Boyd* did not quantify the amount of time that a lawyer must spend on a single case. To the contrary, the court acknowledged that it is appropriate in simple cases like Rossi's to delegate some tasks to paralegals, stating that "professionals are not to be criticized for identifying subroutines that paraprofessionals can adequately perform under a professional's supervision." *Id.* at 647–48. But the lawyer in *Boyd* denied that he used paralegals, which further undermined his testimony that he performed all the work he said he did. *Id.* at 648. In this case, Kohn acknowledges that paralegals perform much of the factual investigation for each case.

Rossi contends that a lawyer may not rely on paralegals unless the attorney "has sufficient information and personal knowledge to have a solid belief that the information is reliable." Dkt. 21, at 18. Further, Rossi says that Emick wasn't entitled to rely on paralegals because he didn't personally know their "background, qualifications, education, or training." Dkt. 31, ¶ 27. But *Boyd* doesn't require either of those things. The standard that Rossi proposes would go well beyond a determination whether a lawyer was professionally involved in a case. Rossi does not allege that Emick was responsible for training paralegals or assessing their abilities. Kohn is the employer, not Emick. And Rossi hasn't adduced any evidence that Kohn didn't adequately train its staff or that they weren't qualified to perform their assigned tasks. For the purpose of this case, it is enough that Emick understood what tasks the paralegals were supposed to perform and that he had sufficient information to confirm that they had performed their jobs. In the absence of evidence that Emick knew that Kohn's staff wasn't adequately performing their jobs, he was entitled to rely on the information he received.

Alternatively, Rossi contends that Emick's review wasn't adequate because he didn't say that he checked for potential illegal clauses in the card member agreement and he didn't review

Wisconsin law to determine whether a default as defined by Discover is consistent with Wisconsin law. Rossi doesn't explain why a statutory definition of default under Wisconsin law would be relevant to a common-law breach of contract claim, and she doesn't identify any illegal clauses that Emick overlooked. In any event, Rossi is again reading too much into the Seventh Circuit law construing § 1692e. The court has not held that a lawyer's signature implies that the lawyer did a complete and thorough analysis of any issue that might be raised in the case. Section 1692e is about misrepresentations, not about the quality of a lawyer's work. Even a poor lawyer is not necessarily deceptive; a lawyer may be professionally involved in a case even if his work is not at the highest level of skill and diligence. In this case, the undisputed facts show that Emick was professionally involved in preparing the complaint, which is all that the case law requires.

## C. Conclusion

Rossi's claim has two fundamental flaws. First, she hasn't adduced evidence of an injury in fact that is fairly traceable to Kohn's conduct. A conclusory allegation that Rossi would have hired a lawyer or otherwise disputed the debt doesn't show an injury in the absence of a concrete harm. Rossi doesn't say that a lawyer wouldn't have uncovered any defenses, so the only likely difference a lawyer would have made would be to incur additional legal expenses. Even if a lawyer could have negotiated a settlement, Rossi doesn't allege that the complaint Kohn filed against her led her to believe that a lawyer couldn't help her with that. Rather, she says that she didn't fight the lawsuit because she didn't think she could win. Because that assessment was accurate, any misperception that Rossi had about the amount of time or effort that Emick spent on the case was harmless.

Second, Rossi misunderstands the case law applying the meaningful involvement standard in the context of debt collection letters. The court of appeals has not imposed a minimum time requirement on reviewing debt-collection cases and it has not held that lawyers who perform routine, high-volume work are necessarily liars. Because Emick was professionally involved in preparing this routine breach of contract case, his signature is not a misrepresentation that violates § 1692e under the standard in *Avila*, *Boyd*, and *Nielsen*.

ORDER

IT IS ORDERED that:

1. Plaintiff Natalie Rossi's motion to supplement the record, Dkt. 40, is GRANTED.

2. Defendant Kohn Law Firm's motion for summary judgment, Dkt. 10, is GRANTED, and this case is DISMISSED for lack of subject matter jurisdiction because Rossi lacks standing to sue.

3. The clerk of court is directed to enter judgment in favor of Kohn and close this case.

Entered May 18, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge